UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

\------------------------------------------------------------------ X
                :

AMAURY ROSARIO,           :       04 CV 688 (ARR)

                :
           Petitioner,     :       <u>NOT FOR ELECTRONIC</u>
                :       <u>OR PRINT</u>
    -against-            :       <u>PUBLICATION</u>
                :

UNITED STATES OF AMERICA,    :       <u>OPINION AND ORDER</u>

                :
           Respondent.    :
                :

\------------------------------------------------------------------ X

ROSS, United States District Judge:

      The petitioner Amaury Rosario ("Rosario" or "petitioner") filed the instant petition for a

writ of habeas corpus pursuant to 28 U.S.C. § 2255 on February 19, 2004. Petitioner claims that

(1) the court lacked jurisdiction under the Juvenile Justice and Delinquency Prevention Act

("Act" or "JDA"), 18 U.S.C. § 5031 et seq., because the government allegedly failed to comply

with the Act's certification and juvenile records provisions; (2) federal prosecution of petitioner

violated the double jeopardy provisions of the JDA and the Fifth Amendment of the

Constitution; (3) the government presented insufficient evidence at trial to establish beyond a

reasonable doubt that the alleged crimes affected interstate commerce as required by the Hobbs

Act; (4) petitioner's statements to the police following his arrest were obtained involuntarily in

violation of his Fifth and Sixth Amendment rights; (5) the government failed to turn over

allegedly exculpatory statements made at a related civil trial by one of the government's

witnesses; and (6) trial and appellate counsel were ineffective. For the reasons stated below, the

petition for a writ of habeas corpus is denied.

## BACKGROUND

Petitioner's conviction arose from a conspiracy to rob and attempted robbery of the Compadre Grocery Store on November 14, 1995. In the course of the attempted robbery, the armed perpetrators, using an automatic weapon and a revolver, shot and killed two employees and two bystanders and seriously injured a third employee. On December 17, 1995, petitioner arrived at the 110th Precinct in Queens with his girlfriend for an unrelated matter. Detectives at the precinct recognized petitioner as a suspect in the crime because Eric Caraballo, the sole survivor and eyewitness to the shooting, had recently selected petitioner's photograph and positively identified petitioner as one of the perpetrators. The detectives detained and questioned petitioner. After being advised of and waiving his Miranda rights, petitioner admitted that he participated in the robbery conspiracy by hiding in the basement of the grocery store and helping the other conspirators gain entry to the store. Petitioner made both written and videotaped statements about his participation in the crime.

Petitioner, who was one month short of his eighteenth birthday at the time of the crime, was tried for robbery, firearms, murder, and attempted murder charges as an adult in state court. He was acquitted of all charges in the spring of 1998. In July 1998, when petitioner was approximately five months short of his twenty-first birthday, federal authorities charged him by juvenile information with conspiracy to commit robbery, in violation of 18 U.S.C. § 1951; robbery, in violation of 18 U.S.C. § 1951; and using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). Pursuant to the JDA, the government filed a certification—signed by Loretta E. Lynch, Acting United States Attorney for the Eastern

District of New York—stating that petitioner is charged with crimes of violence and that there is a substantial federal interest warranting the exercise of federal jurisdiction.

The government then moved the court to transfer petitioner's case from juvenile to adult status in accordance with the procedures set forth in the JDA. As a prerequisite to transfer, the JDA mandates that the government file the defendant's prior juvenile court records or certify that the defendant has no juvenile record or that the juvenile record is unavailable. See 18 U.S.C. § 5032. The government provided the court with records of six arrests of petitioner prior to his eighteenth birthday. The government failed to obtain records from the Queens Family Court related to a 1992 arrest for robbery. After serving several subpoenas on the state court, the government was notified that the record was sealed and unavailable. See Resp't Ex. O. The government again served several subpoenas on the Clerk of the Queens Family Court, see Resp't Ex. P, but never received the records associated with petitioner's 1992 robbery arrest.

Under the JDA, transfer is appropriate if the court finds, after conducting a hearing, that transfer would be in the interest of justice. See 18 U.S.C. § 5032. To assess whether transfer is appropriate, the court must consider and make findings on the record of each of the following factors: (1) the age and social background of the juvenile; (2) the nature of the alleged offense; (3) the extent and nature of the juvenile's prior delinquency record; (4) the juvenile's present intellectual development and psychological maturity; (5) the nature of past treatment efforts and the juvenile's response to such efforts; and (6) the availability of programs designed to treat the juvenile's behavioral problems. Id. To aid in its assessment of these factors, the court appointed Dr. Barry Rosenfeld to conduct a psychological examination of petitioner and submit a report of his findings to the court. In his report filed October 12, 1998, Dr. Rosenfeld found that

3

petitioner's age and social background, the nature of the alleged offense, his history of delinquent behavior, his average intellectual functioning and emotional maturity weigh in favor of transfer. See Resp't Ex. F at 9. The government's expert, Dr. N.G. Berrill, also examined petitioner and filed a report with similar conclusions. See Resp't Ex. G. at 12-13. In fact, even defense expert, Dr. Ife A. Landsmark, concluded that—"despite evidence of dysfunctional family transactional patterns, a suspected history of emotional abuse/neglect, and the presence of significant psychopathology in the current protocol"—transfer to adult status was appropriate. See Resp't Ex. H at 2.

On April 29, 1999, at a hearing scheduled to address the government's transfer motion, petitioner filed a written request to waive his rights under the JDA and, thus, be subjected to prosecution as an adult. See Resp't Ex. R. At the hearing, petitioner's counsel conceded that defense expert Dr. Landsmark concurred with the court-appointed and government experts, who recommended transfer. See Resp't Ex. Q at 3. Trial counsel stated that he discussed the situation with petitioner and petitioner's family. Id. at 3-4. Based on the psychological reports and the status of case law in the Second Circuit, Mr. Ricco and petitioner agreed that the best approach would be to consent to transfer. Id. at 3.

The court then proceeded to question petitioner about whether his waiver was voluntarily executed. Id. at 4. Petitioner stated that he fully understood and agreed with his attorney's reasoning and that his waiver was voluntary. Id. In addition, the court explained that petitioner had a right to a hearing and a determination of the transfer motion on the merits. Id. Petitioner replied that he understood his rights, but that he believed waiver was the appropriate way to proceed. Id. at 5. The court accepted petitioner's waiver and then observed that given "the entire

4

record, including the juvenile record and all the reports and the facts alleged by the government ... as well as the defendant's age at the time of the alleged incident and his age now, it is indeed a foregone conclusion as to what the result of the hearing would have been." Id. On August 2, 1999, the court formally ordered petitioner's transfer to adult status pursuant to 18 U.S.C. § 5032.

At trial, the government presented the testimony of a cooperating witness, Sean Estrella, who testified that he and petitioner, among others, participated in the robbery conspiracy and that petitioner had shot the five victims at the back of the store. The government also presented the testimony of Eric Caraballo, the only survivor of the shooting, who corroborated many of the details in Estrella's account of the crime and identified petitioner as being involved in the incident. In addition to the testimony of Estrella and Caraballo, petitioner's written and videotaped statements, disclosing his participation in the attempted robbery, were also admitted into evidence.[1] Finally, the government also presented ballistics, medical, and other physical evidence that corroborated the government witnesses' accounts of the crime. The defense case consisted of petitioner's own testimony that his confession was false and physically coerced by the police. He and his parents also testified that he was at a party in honor of his grandparents' arrival from the Dominican Republic on the night of the crime. The government's rebuttal case included, inter alia, evidence that petitioner's grandparents had arrived from the Dominican Republic the night before the robbery.

---

[1] At a hearing on December 10, 1999, the court orally denied petitioner's motion to suppress his statements, rejecting his allegations that the police failed to advise him of his Miranda rights and physically coerced him into confessing.

The jury found petitioner guilty of all the counts in the indictment. On June 26, 2001, the court sentenced petitioner to concurrent terms of life imprisonment on each of the four murder counts, twenty years on each of the robbery conspiracy and attempted robbery counts, and ten years on the firearms count. Petitioner appealed his conviction to the Court of Appeals for the Second Circuit, arguing that there was insufficient evidence to sustain a conviction under the Hobbs Act, 18 U.S.C. § 1951, because the government failed to prove beyond a reasonable doubt that the alleged crime affected interstate commerce. On October 9, 2002, the Court of Appeals issued a summary order rejecting petitioner's arguments and affirming the conviction. United States v. Rosario, 48 Fed. Appx. 12 (2d Cir. 2002). Petitioner also filed a petition for a writ of certiorari in the Supreme Court of the United States, which was denied on February 24, 2003. Rosario v. United States, 537 U.S. 1217 (2003). He timely filed his petition for a writ of habeas corpus on February 19, 2004, within the one-year statute of limitations.

## DISCUSSION

I.    Claims Under the JDA

On habeas review, petitioner makes several claims challenging the government's application of the JDA to his case. He argues that the court lacked subject matter jurisdiction under the JDA because (1) the government falsely and erroneously certified that a substantial federal interest warranted federal prosecution of petitioner's case; (2) the certification was made by the acting United States Attorney for the Eastern District of New York rather than the Attorney General of the United States as required by statute; and (3) the government failed to provide all of petitioner's juvenile court records or certifications of unavailability for sealed records. In addition to his jurisdictional claims, he contends that federal prosecution of his case

6

violated the double jeopardy provisions of the JDA and the Fifth Amendment. Respondent contends that the court may not review petitioner's claims related to the JDA because they are procedurally defaulted, and petitioner has failed to demonstrate either cause for the default, and prejudice resulting therefrom, or actual innocence.

"[A] collateral attack on a final judgment in a federal criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)). However, "[h]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Bousley v. United States, 523 U.S. 614, 621 (1998) (internal quotation marks and citation omitted). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'"[2] Id. at 622.

Here, petitioner clearly failed to raise his challenges to the application of the JDA at trial or on direct appeal and, thus, the claims are procedurally defaulted. Petitioner does not make a claim of actual innocence, but does allege that the default should be excused because trial counsel was ineffective for failing to adequately research the JDA and for advising petitioner to waive his rights under the JDA. As explained below, counsel was not ineffective because the record demonstrates that he adequately researched the applicable law and that he and petitioner

---

[2] A claim of ineffective assistance, however, will not be procedurally barred for failure to raise it on direct review. Massaro v. United States, 538 U.S. 500, 504-05 (2003).

made a strategic decision to consent to transfer. In any event, petitioner could not establish

prejudice as required to excuse the procedural default. "To satisfy the prejudice prong, petitioner

must show not merely a possibility of prejudice, but that the alleged error worked to his actual

and substantial disadvantage." Capiello v. Hoke, 698 F. Supp. 1042, 1052 (E.D.N.Y. 1988)

(internal quotation marks and citation omitted). As discussed in further detail below, petitioner's

jurisdictional and double jeopardy claims are entirely without merit. Thus, trial counsel's alleged

failure to adequately research the JDA did not affect the outcome of petitioner's trial or the

ultimate sentence he received. Moreover, had petitioner chosen to proceed with his transfer

hearing, the evidence—including the report of petitioner's own psychological expert—was

overwhelmingly in favor of transfer.

Since petitioner cannot show cause for the procedural default and resulting prejudice, nor

has he claimed actual innocence, his claims challenging application of the JDA are procedurally

barred and cannot be reviewed. Accordingly, petitioner's claims that the court lacked

jurisdiction under the JDA and that federal prosecution of petitioner violated the double jeopardy

provisions of the JDA and the Fifth Amendment shall be dismissed without reaching the merits.[3]

II.     Hobbs Act Claim

Petitioner argues that there was insufficient proof at trial to sustain his conviction for

violating the Hobbs Act, 18 § U.S.C. 1951, because the government failed to prove beyond a

reasonable doubt that the alleged offense had an effect on interstate commerce. Petitioner raised

this argument on direct appeal, and the Court of Appeals concluded that "the evidence

concerning beer and cigarettes is (barely) sufficient to support a finding beyond a reasonable

---

[3] These claims constitute grounds one, two, four, and five of the original petition.

doubt that the crime had the requisite de minimus effect on interstate commerce." Rosario, 48

Fed. Appx. at 14. While the Court of Appeals found that the evidence for interstate commerce

"approache[d] the line of insufficiency," id. at 13, it denied the claim on the merits and affirmed

the jury verdict nonetheless. Id. at 15. Thus, petitioner's claim of insufficient evidence of

interstate commerce is procedurally barred and must be dismissed.[4] See Cabrera v. United

States, 972 F.2d 23, 25 (2d Cir. 1992) (noting that the Second Circuit has repeatedly held that

"'section 2255 may not be employed to relitigate questions which were raised and considered on

direct appeal.'" (quoting Barton v. United States, 791 F.2d 265, 267 (2d Cir. 1986) (per

curiam))).

III.    *Miranda* Claim

Petitioner claims that his written and videotaped statements were obtained in violation of

his rights under the Fifth and Sixth Amendments. More specifically, petitioner alleges that law

enforcement officials failed to read him his Miranda rights, that he was coerced into confessing

to the crimes due to physical violence, and that he was denied the right to speak to counsel or to a

member of his family.

Petitioner failed to raise these claims on direct appeal and, therefore, they are

procedurally barred. In his reply memorandum of law, petitioner appears to argue that ineffective

assistance of appellate counsel should excuse the procedural default on this claim. However, as

discussed below, the court concludes that there was no ineffective assistance of counsel, trial or

appellate, in petitioner's case. Moreover, petitioner is unable to show even a possibility of

prejudice in light of the overwhelming evidence of his guilt. Testimony of a cooperating witness,

---

[4] This claim is ground six of the original petition.

which was corroborated by the only surviving victim, established beyond a reasonable doubt petitioner's guilt for the robbery conspiracy, the attempted robbery, and the murders.

Since petitioner cannot show cause for the procedural default and resulting prejudice, nor has he claimed actual innocence, the claim is procedurally barred and cannot be reviewed. Accordingly, petitioner's claim that his statements were obtained in violation of his Fifth and Sixth Amendment rights shall be dismissed without reaching the merits.[5]

IV.    _Brady_ Claim

In a pro se addendum to his initial habeas petition, petitioner claims that the deposition testimony of Eric Caraballo, the only surviving victim of the crime at issue here, in a related civil case is exculpatory evidence that should have been provided to the defense pursuant to Brady v. Maryland, 373 U.S. 83, 87 (1963). Respondent argues that petitioner's motion to amend, which was filed well after the one year statute of limitations expired, does not relate back to his timely filed habeas petition and, therefore, should be dismissed as time-barred.

Under § 2255(1), petitioner had one year from the date on which the judgment of his conviction became final to file a petition for habeas corpus.[6] The date on which petitioner's conviction became final was February 24, 2003. Petitioner's pro se addendum is dated January

---

[5] This claim is ground seven of the original petition.

[6] To the extent that petitioner claims that the statute of limitations should be calculated from the date specified by subsection four of § 2255, the court rejects his argument. Subsection four provides that the statute of limitations may be calculated from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." Although petitioner claims that Caraballo's deposition testimony from the civil trial is "newly discovered evidence," there is no evidence that petitioner only recently became aware of the deposition testimony. In fact, he concedes that he was aware of the civil lawsuit and the deposition testimony at the time of his appeal. Therefore, the court rejects any claim that subsection 4 of § 2255 is applicable to petitioner's pro se claim.

27, 2005, which is almost a year after the expiration of the one year statute of limitations. The claims in petitioner's addendum may only be reviewed by the court if they "relate back" to those raised in the original petition, meaning that they must be based on the same "conduct, transaction, or occurrence set forth in the original [petition]." See Ching v. United States, 298 F.3d 174, 181 (2d Cir. 2002) (noting that the "relate back" doctrine of Rule 15(c) of the Federal Rules of Civil Procedure "governs the timeliness of a motion to amend submitted after AEDPA's statute of limitations has expired"). The Supreme Court has recently held that it is not sufficient simply to show that the claims arose from the same trial and conviction as those challenged by the original petition. See Mayle v. Felix, 125 S. Ct. 2562, 2574 (2005).

Here, petitioner's claim that the government failed to disclose allegedly exculpatory evidence relates to an entirely different set of facts and different set of constitutional claims than the grounds for habeas relief set forth in his original petition. In his original petition, petitioner attacks his conviction on numerous grounds, ranging from lack of subject matter jurisdiction to ineffective assistance of counsel. However, nothing in his original petition gives the government notice that there is a potential Brady claim. At most, petitioner could argue that his Brady claim arose out of the same trial as the claims in his original petition. Under Mayle, the claim in petitioner's pro se addendum is clearly unreviewable because it is time-barred and fails to relate back to the original petition.[7]

V.    Ineffective Assistance Claims

---

[7] To the extent that petitioner claims in his pro se addendum that appellate counsel's failure to obtain Caraballo's civil deposition testimony is ineffective assistance of counsel, the court also holds that such a claim is time-barred.

Petitioner argues that he was denied the effective assistance of counsel because trial counsel allegedly failed to adequately research the JDA, improperly advised petitioner about the consequences of waiving his rights under the JDA, and inadequately prepared for trial by interviewing petitioner's state court trial counsel and witnesses. Petitioner has properly raised these claims for the first time on habeas review. See Massaro v. United States, 538 U.S. 500, 506 (2003). Respondent contends that petitioner's complaints about trial counsel's performance are either meritless or relate to matters of strategy and thus do not constitute ineffective assistance.

A petitioner seeking to attack his conviction based on ineffective assistance of counsel must: (1) show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms," and (2) demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687-89 (1984).

In analyzing a claim that counsel's performance fell short of constitutional standards, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. As explained by the Supreme Court,

> strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.

Id. 690-91. Moreover, "[i]n assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct, and may not use hindsight to second-guess his strategy choices.'" Mayo v. Henderson,

13 F.3d 528, 533 (2d Cir. 1994) (quoting Strickland, 466 U.S. at 690). Thus, a petitioner cannot prevail on a claim of ineffective assistance merely because he disagrees with his counsel's strategy. See Strickland, 466 U.S. at 689.

A. Failure to Adequately Research the JDA

Petitioner's first claim of ineffective assistance relates to trial counsel's alleged failure to adequately research the JDA. Petitioner argues that had trial counsel adequately researched the JDA, he would have discovered that the court lacked subject matter jurisdiction over the case because the required certification was defective and the government failed to produce all of petitioner's juvenile records and that federal prosecution of petitioner violated the double jeopardy provisions of the JDA and the Fifth Amendment. However, petitioner's legal arguments related to the JDA are entirely without merit. Therefore, the court cannot conclude that trial counsel's knowledge and understanding of the JDA were at all deficient or fell below the objective standard of reasonableness mandated by Strickland.

Petitioner claims that the court lacked subject matter jurisdiction because the certification required by the JDA was not signed by the Attorney General of the United States as required by 18 U.S.C. § 5032. Petitioner's argument is without merit. Under regulations adopted pursuant to 18 U.S.C. § 5032, the Attorney General delegated the authority to provide certification under the JDA to the Assistant Attorney General in charge of the Criminal Division and his Deputy Assistant Attorneys General. 28 C.F.R. § 0.57. The regulations further specify that "[t]he Assistant Attorney General in charge of the Criminal Division is authorized to redelegate any function delegated to him under this section to United States Attorneys." Id. On July 20, 1995, Assistant Attorney General Jo Ann Harris issued a memorandum redelegating her authority to

13

certify cases under 18 U.S.C. § 5032 to United States Attorneys. See Resp't Ex. U. Therefore, the certification by Acting United States Attorney Loretta E. Lynch[8] in July of 1998 was proper. See United States v. Doe, 49 F.3d 859, 866 (2d Cir. 1995) ("The Attorney General has delegated this certification authority [under 18 U.S.C. § 5032] to the United States Attorney for the district in which the offense is alleged to have occurred.").

Petitioner also alleges that the certification was jurisdictionally defective because it did not sufficiently allege a substantial federal interest warranting the exercise of federal jurisdiction. Petitioner's argument presupposes that the court has the authority to review the United States Attorney's decision to proceed with certification. Whether the court has such authority is doubtful. In United States v. Vancier, the Second Circuit held that the certification under 18 U.S.C. § 5032, which at the time did not include the "substantial federal interest" provision, "falls into the category of unreviewable determinations to be made, in this instance, by the Attorney General." 515 F.2d 1378, 1380-81. The Second Circuit has not decided whether the court has such authority under the JDA as it was enacted at the time of petitioner's trial and as it is currently enacted. However, nine circuit courts have relied on "traditional notions of prosecutorial discretion, the statute's structure and provisions, and legislative history" to conclude that "there is no judicial review of the government's certification of the substantial federal interest." United States v. F.S.J., 265 F.3d 764, 768 (9th Cir. 2001) (adopting the reasoning of cases decided by First, Third, Fifth, Sixth, Seventh, Eighth, Eleventh, and D.C. Circuits). The court need not decide the scope of review of certifications under the JDA in the

---

[8] The Acting United States Attorney was acting on behalf of the United States Attorney for the Eastern District of New York Zachary Carter, pursuant to 28 C.F.R. § 0.131, which is now codified at 38 C.F.R. § 0.136.

instant case. However, given Second Circuit precedent on this issue and the weight of persuasive authority from other circuits, it is clear that petitioner's claim that trial counsel failed to adequately research this issue is meritless.

Petitioner also argues trial counsel failed to adequately research the issue of whether the government's failure to obtain all of petitioner's juvenile records is a jurisdictional defect. Petitioner's claim incorrectly assumes that the government failed to comply with the JDA's juvenile records requirement. Under 18 U.S.C. § 5032, "[a] juvenile shall not be transferred to adult prosecution ... until any prior juvenile court records of such juvenile have been received by the court, or the court of the juvenile court has certified in writing ... that the juvenile's record is unavailable." Here, the government obtained six of seven records of petitioner's juvenile arrests. See Resp't Exs. I-N. The government subpoenaed the Queens Family Court on several occasions to retrieve the record of petitioner's 1992 arrest, see Resp't Ex. P, but the clerk of the juvenile court merely responded by stating in writing that the record was "sealed and is unavailable." See Resp't Ex. O. With regard to an earlier version of the juvenile records provision,[9] the Second Circuit has recognized "most courts have read [it] to require only good faith efforts by the government to provide the court with documentation of a juvenile's prior record (or to the effect

---

[9] The version of the juvenile records provision at issue in Wong specified that "'*proceedings* against a juvenile under this chapter shall not be commenced until any prior juvenile records of such juvenile have been received by the court.'" 40 F.3d at 1368 (quoting 18 U.S.C. § 5032 (emphasis added)). The current version of the juvenile records provision, which is at issue here, only specifies that "a juvenile shall not be *transferred* to adult prosecution" until all prior juvenile records have been received by the court. 18 U.S.C. § 5032 (emphasis added). Thus, the language of the previous version of the provision appears to directly affect the court's subject matter jurisdiction, while the current version only relates to the issue of transfer. There is no reason to believe that the Second Circuit's reasoning in Wong would not be applicable to the current version of the provision, which merely relates to the court's authority to transfer, not the court's jurisdiction to hear the case.

15

that no such record exists or is available)." United States v. Wong, 40 F.3d 1347, 1369 (2d Cir.

1994). In Wong, the Second Circuit concurred with the "good faith" standard adopted by other

courts, concluding that the juvenile records provision "should be read to afford the government a

limited amount of flexibility." Id. Given Second Circuit precedent and the government's good

faith attempt to comply with the juvenile records requirement, the court is satisfied that trial

counsel's alleged failure to research this issue does not fall below the objective standard of

reasonableness.

Petitioner also claims that trial counsel failed to research the question of whether federal

prosecution of him violated the double jeopardy provisions of the JDA and the Fifth

Amendment. Petitioner's argument refers to the following provision of the JDA:

> Once a juvenile has entered a plea of guilty or the proceeding has
> reached the stage that evidence has begun to be taken with respect
> to a crime or an alleged act of juvenile delinquency subsequent
> criminal prosecution or juvenile proceedings based upon such
> alleged act of delinquency shall be barred.

18 U.S.C. § 5032. Petitioner argues that this language bars any successive prosecutions, even by

separate sovereigns. Aside from petitioner's cursory textual reading of the statue, he cites no

case law or legislative history supporting his argument. However, at least one circuit court has

found that "there is no suggestion in either the statutory language or the legislative history that

[the provision] was meant to apply where a state or tribe had already proceeded against a

juvenile." United States v. Juvenile Female, 869 F.2d 458, 461 (9th Cir. 1989). Moreover, in his

declaration, trial counsel affirms that, at the time of petitioner's trial, he understood the concept

of successive proceedings under the JDA and came to the conclusion that "[t]he []JDA simply

restates the rule of double jeopardy in a juvenile context, which does not bar successive

16

prosecutions by separate sovereigns." See Resp't Ex. V at 10. Given that trial counsel has

affirmed that he understood the issue of successive prosecutions and his understanding comports

with the only case law on the issue, the court cannot conclude that trial counsel's performance

fell below reasonable professional standards.

Petitioner has failed to establish that trial counsel did not adequately research various

issues related to the JDA and, thus, has failed to satisfy the first prong of Strickland.

Consequently, habeas relief is not warranted on this claim.

B. Improperly Advising Petitioner to Waive His Right to a Transfer Hearing

Petitioner's second claim is that trial counsel was ineffective for advising petitioner to

waive his rights under the JDA and consent to transfer. Petitioner does not argue that trial

counsel failed to advise him of his rights under the JDA or the consequences of waiver. In fact,

the record clearly demonstrates that trial counsel and the court advised petitioner of the

consequences of waiver. See Resp't Ex. Q at 3-4. Moreover, the record demonstrates that

petitioner acknowledged that he understood that he had the right to a transfer hearing, that he

understood the consequences of waiver, and that he was voluntarily consenting to transfer. Id. at

4-5. Petitioner's only argument is that trial counsel was ineffective for recommending waiver

because "petitioner received absolutely no benefit for his waiver." Pet. Reply Mem. at 27.

Petitioner's hindsight conclusion that he received no benefit from waiver is clearly shortsighted.

Assuming that trial counsel's conclusion that petitioner could not successfully defend the transfer

motion was true, the obvious benefit of waiving a lengthy transfer hearing is that petitioner and

his trial counsel could spend time and resources focusing on pre-trial motions and trial strategy.

While petitioner dismisses the possibility that the waiver was tactical or strategy choice by

counsel (voluntarily approved by petitioner), the court sees it as just that. Under Strickland, such a strategic choice is "virtually unchallengeable." 466 U.S. at 690.

Even if trial counsel's advice to waive transfer was "ineffectiveness as a matter of law," as petitioner argues, Pet. Reply Mem. at 27, petitioner has failed satisfy the second prong of the Strickland analysis. Petitioner has not established that but for counsel's erroneous advice, the result of his case would have been different. As stated earlier, to determine whether transfer is appropriate, the court must balance the following six factors: (1) the age and social background of the juvenile; (2) the nature of the alleged offense; (3) the extent and nature of the juvenile's prior delinquency record; (4) the juvenile's present intellectual development and psychological maturity; (5) the nature of past treatment efforts and the juvenile's response to such efforts; and (6) the availability of programs designed to treat the juvenile's behavioral problems. 18 U.S.C. § 5032. The Second Circuit has held that "[t]he six statutory factors need not be accorded equal weight by the district court, which may balance the factors in any way that seems appropriate to it." United States v. Nelson, 68 F.3d 583, 588 (2d Cir. 1995). However, the Second Circuit has also placed a special emphasis on the fifth factor, stating that "[r]ehabilitation clearly is one of the primary purposes of the juvenile delinquency provisions." Id. at 590. In petitioner's case, all three psychological experts, including petitioner's own expert Dr. Landsmark, thoroughly examined him and concluded that the potential for rehabilitation was unlikely. See Resp't Ex. F-H. Given the adverse conclusions of the psychological experts, along with petitioner's age at the time of the trial, petitioner's extensive criminal history, and the brutal nature of the crime, the court can only conclude that transfer to adult status would have occurred even if petitioner had

18

not waived his right to a transfer hearing. Thus, the court concludes that habeas relief is not warranted on this claim.

C. <u>Failure to Interview State Court Trial Counsel or Call State Court Witnesses</u>

Petitioner argues that trial counsel's failure to consult with petitioner's attorney, who represented him when he was acquitted for the same crime in state court, and failure to interview witness who had testified at the state court trial constitutes ineffective assistance of counsel. The court summarily rejects petitioner's claims with regard to the state court trial. Petitioner complaint is simply that trial counsel failed to copy the apparently successful strategy and tactics of petitioner's state court counsel. Thus, petitioner's claims go to the heart of an attorney's tactical or strategic choices, which are "virtually unchallengeable." <u>Strickland</u>, 466 U.S. at 690. In hindsight, petitioner obviously favors the approach of the attorney who successfully defended him in state court. However, the court cannot conclude that trial counsel's failure to consult with petitioner's state court attorney or call the same witnesses was objectively unreasonable. In any event, in spite of his speculation to the contrary, petitioner cannot establish that but for counsel's alleged error, the outcome of the case would have been different. Given that petitioner fails to satisfy both prongs of the <u>Strickland</u> inquiry, the court concludes that habeas relief is not warranted on this claim.[10]

## CONCLUSION

For the foregoing reasons, the court denies the instant petition for a writ of habeas corpus. No certificate of appealability is granted with respect to any of the petitioner's claims, since the

---

[10] Petitioner's ineffective assistance claims constitute the third ground of his original habeas petition.

petitioner failed to make a substantial showing of any denial of his constitutional rights. The petitioner has a right to seek a certificate of appealability from the United States Court of Appeals for the Second Circuit. <u>See</u> 28 U.S.C. § 2253.

The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.


Allyne R. Ross
United States District Judge

Dated: March 6, 2006
       Brooklyn, New York

SERVICE LIST:

Counsel for Petitioner
Gino Josh Singer, Esq.
299 Broadway, Suite 1405
New York, NY 10007

Counsel for Respondent
Kelly T. Currie
United States Attorneys Office
147 Pierrepont Plaza
Brooklyn, NY 11201